# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LEIA DELGADO

## DEFENDANTS
GUCCI AMERICA, INC.

**(b)** County of Residence of First Listed Plaintiff  NEW YORK
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  MONTGOMERY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sidney L. Gold, Esquire - The Gold Law Firm, P.C.
1835 Market St., Ste. 515, Phila, PA 19103 215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
1981, TITLE VII, PHRA
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
150,000 IN EXCESS

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  12/23/2025

SIGNATURE OF ATTORNEY OF RECORD
/S/ SIDNEY L. GOLD, ESQUIRE

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 350 Mall Boulevard, Space 3002, King of Prussia, Pennsylvania 19406

---

*RELATED CASE IF ANY:* Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?     Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| LEIA DELGADO | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| GUCCI AMERICA, INC. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　(☑)


| 12/23/2025 | /s/ Sidney L. Gold, Esquire | PLAINTIFF |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
#### (See §1.02 (e) Management Track Definitions of the
#### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEIA DELGADO,                          :
          *Plaintiff,*          :
                            :
          v.              :       **CIVIL ACTION NO._____**
                            :
GUCCI AMERICA, INC.,                   :
          *Defendant.*         :
_____       :

## COMPLAINT AND JURY DEMAND

## I.    PRELIMINARY STATEMENT:

    1.    This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Leia Delgado ("Plaintiff"), a former employee of the Defendant, Gucci America, Inc. ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

    2.    This action arises under 42 U.S.C. §1981 ("§1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA").

## II.    JURISDICTION AND VENUE:

    3.    The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391, as Plaintiff's claims are substantively based on §1981 and Title VII.

    4.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff's claims arising under the PHRA.

5.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on August 12, 2024.

6.      The EEOC issued a Notice of Right to Sue on September 26, 2025. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Right to Sue letter.

7.      Plaintiff has satisfied all administrative prerequisites to the filing of this action.

### III.    PARTIES:

8.      Plaintiff, Leia Delgado ("Plaintiff") is an adult individual and citizen of the State of New York.

9.      Defendant, Gucci America, Inc. ("Defendant" or "Gucci") is a corporation doing business in the Commonwealth of Pennsylvania, with a place of business located therein at 350 Mall Boulevard, Space 3002, King of Prussia, Pennsylvania 19406.

10.     At all times relevant hereto, the Defendant employed fifteen (15) or more employees and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the PHRA, 43 P.S. § 954(b).

### IV.    STATEMENT OF FACTS:

*Plaintiff's Employment*

11.     Defendant employed Plaintiff, a Black woman of Christian faith, from approximately May 2014 until her unlawful termination on or about February 16, 2024.

12.     Throughout her employment, Plaintiff held the position of Sales Associate, which Defendant later renamed to Client Advisor.

13.     Plaintiff performed her job duties competently at all relevant times.

2

14.     During the time frame pertinent to this action, Plaintiff reported to Jessica Wells ("Wells"), Assistant Store Director, Gregory Wright ("Wright"), Store Director, Omar Pagan ("Pagan"), Manager, James Bressi ("Bressi"), Manager, and Sara Doungchampa ("Doungchampa"), Sales Lead.

*Race Discrimination Based on Grooming Standards*

15.     In or about 2015, Defendant implemented grooming standards that required employees to maintain "sleek hair," thereby prohibiting natural textured Black hairstyles.

16.     The images in Defendant's grooming guide demonstrating acceptable hairstyles depicted only non-Black individuals.

17.     When depicting acceptable make-up styles, Defendant's guide showed Caucasian women wearing simple make-up, but displayed an image of Mariah Carey, a Black woman, with similar make-up under the "do-not" section.

18.     In or around 2019, Defendant began subjecting Plaintiff to race-based discrimination.

19.     At that time, Wells gave Plaintiff a verbal warning for having "frizzy" hair and wearing her hair in a high ponytail. Wells' comment was in direct reference to Plaintiff's natural Black hair texture.

20.     Wells took no issue with non-Black individuals who wore their hair in a high ponytail, such as Doungchampa, an Asian individual.

21.     In or around that same period, Wells and Wright removed Plaintiff from Defendant's prestigious "GG Club" due in part to her "frizzy hair," which they deemed to be a behavioral issue. Said removal precluded Plaintiff from earning a $10,000.00 bonus.

22.     In or around 2019, Wright continually reprimanded Plaintiff's Black colleague, Alex Outlaw ("Outlaw"), a Client Advisor, and mocked him based on his Black hair texture. Wright's criticism of Outlaw's hair became so severe that it required Outlaw to wear a weaved-in wig in the workplace.

23.     Plaintiff's repeated attempts to comply with Defendant's discriminatory grooming standards by altering her natural Black hair texture caused significant damage to her hair, resulting in the need to cut her hair into a short bob to address the damage and breakage.

*Sexual Harassment by Client B.P.*

24.     In or around early 2021, Plaintiff began to face severe and pervasive sexual harassment from one of her clients, B.P.

25.     B.P. and a sheikh whom he shopped for commented that Plaintiff's feet were "sexy."

26.     B.P. invited Plaintiff to attend vacations with him and communicated his sexual desires to her, including his lust for "prostitutes."

27.     B.P.'s sexual harassment continued unabated despite Plaintiff's continued rejection of his sexual advances and requests for him to stop said harassment, as well as her complaint regarding the harassment with Shawn McAlister ("McAlister"), Stock Manager.

28.     Plaintiff repeatedly registered complaints of sexual harassment referencing B.P.'s conduct with Wells and Pagan. They failed to take any appropriate remedial action to cause the harassment to cease.

29.     Defendant continually required Plaintiff to work with B.P. and serve him due to his status as one of Defendant's top clients.

30.     In or around January 2022, B.P. sent Plaintiff a text message containing an image of himself in underwear with an erect penis. Plaintiff again rejected his sexual advances.

31.     Shortly following Plaintiff's return from a leave of absence, in or around February 2022, Plaintiff reported the sexual harassment to Pagan. Instead of taking remedial action, Pagan insisted that Plaintiff continue working with B.P., explaining that, despite Plaintiff's concerns, B.P. was one of Defendant's top clients.

32.     Thereafter, Pagan acknowledged that B.P. was "creepy."

33.     In or around March 2022, Plaintiff registered another complaint of sexual harassment against B.P. with Wells. Defendant continued to require Plaintiff to serve B.P.

34.     In or around mid-2023, Plaintiff made another complaint of sexual harassment regarding B.P.'s conduct with Bressi. Instead of taking any remedial action, Bressi instructed Plaintiff to continue working with him.

35.     In or around late-2023, Plaintiff made additional complaints of sexual harassment against B.P. with Dustin Castronuovo ("Castronuovo"), Stock Manager, and Porscha McNeil ("McNeil"), Floor Manager. However, Defendant continued to fail to take corrective action.

*Sex and Religious Discrimination by Sara Doungchampa*

36.     Beginning in or around February 2023, Plaintiff began to face additional sex-based and religious-based discrimination from her supervisor, Doungchampa.

37.     In or around that same time, Doungchampa told Plaintiff that she had decided to become more devout in her Muslim faith.

38.     Doungchampa began to target Plaintiff as one of the female employees who wore more formfitting clothing in the workplace. While Plaintiff wore a uniform during her work shifts, Plaintiff often wore athletic-style clothing before and after her shifts. Upon information

and belief, Doungchampa targeted Plaintiff because Plaintiff's attire failed to comport with Doungchampa's religious beliefs.

39.    Doungchampa directed Plaintiff to assist workers in the back of the store in an effort to keep her away from paying clients.

40.    Doungchampa would additionally warn Plaintiff that she better "watch out," which Plaintiff understood to be a threat of physical harm.

41.    Doungchampa took clients away from Plaintiff and instructed Plaintiff's fellow Client Advisors not to speak with her.

42.    Doungchampa directed Ali DeMesne ("DeMesne"), a Security Guard, to monitor Plaintiff, follow her around the store, advise other Client Advisors not to speak with her, and to be cautious when dealing with her.

43.    Doungchampa did not subject male employees or more conservatively dressed women to similar conduct, such as Natasha Anglin ("Anglin"), Client Advisor, and Vivian Hale ("Hale"), Client Advisor.

44.    In or around May 2023, Doungchampa became so irate toward Plaintiff that she had to be physically restrained from assaulting Plaintiff.

45.    In or around early November 2023, Doungchampa began to similarly target Defendant's newly hired female Client Advisors, Elena Van ("Van") and Lyla Duffy ("Duffy"), who, like Plaintiff, wore more formfitting and athletic-style attire.

46.    Doungchampa acted hostile toward Van and Duffy and obstructed their ability to make sales.

47.    In or around December 2023, Doungchampa attempted to acquire one of Plaintiff's clients and falsely accused Plaintiff of abandoning them.

6

48.     At that same time, Doungchampa purposely cut Plaintiff off while they were each driving home from work, causing Plaintiff to almost get into a car accident.

*Additional Race Discrimination*

49.     In or around June 2023, Bressi began to comment that he did not want the "riff raff," "woke," and "ghetto" of the area in Defendant's store. Plaintiff understood Bressi's comment to mean that he did not wish for Defendant to serve Black clients.

50.     In confirmation of Plaintiff's belief, she thereafter observed Bressi's failure to serve Black and Hispanic clients entering Defendant's store.

51.     In or around December 2023, Plaintiff registered a complaint of race discrimination with Defendant's Office of Human Resources referencing Bressi's aforementioned acts of race discrimination.

*Pretextual Investigation and Termination*

52.     On or about January 19, 2024, Plaintiff processed a special order for that same day. It was common practice for Defendant's employees to create special orders to record sales for a specific day, even for a different day than the original sale was made.

53.     Several days later, Bressi and Wells questioned Plaintiff about why she completed a special order. After Plaintiff explained that she had used a special order to accurately record the sale she made that day, they expressed that it was "no big deal."

54.     Approximately a week later, Plaintiff was interrogated by Defendant's head of security, in a locked room, and accused of committing fraud in Defendant's system. Defendant's security did not permit Plaintiff to leave until she provided them a written statement of what was discussed.

55.     Defendant did not similarly discipline or interrogate non-Black employees who processed special orders, such as Anthony Parisi ("Parisi"), Client Advisor, a Caucasian individual, Leona Fisher ("Fisher"), Client Advisor, a Caucasian individual, Laurinda Linn ("Linn"), Client Advisor, an Asian individual, Wells, a Caucasian individual, Pagan, a Hispanic individual, and Albert Orduña ("Orduña"), Sales Lead, a Hispanic individual.

56.     On or about February 16, 2024, Defendant terminated Plaintiff's employment without explanation.

57.     Defendant terminated Plaintiff's employment based on her sex (female), her race (Black), her religion (Christian), and in retaliation for protesting sexual harassment and discrimination in the workplace.

### COUNT I
**Race Discrimination and Retaliation (42 U.S.C. § 1981)**
**Plaintiff v. Defendant**

58.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59.     42 U.S.C. § 1981 provides that all persons shall have the same right to make and enforce contracts as is enjoyed by white citizens.

60.     Defendant discriminated against Plaintiff on the basis of her race (Black) by implementing and enforcing racially discriminatory grooming standards that prohibited natural Black hairstyles; subjecting Plaintiff to discipline based on her natural Black hair texture; removing Plaintiff from the GG Club and depriving her of a $10,000.00 bonus; subjecting Plaintiff to disparate treatment in the investigation concerning special orders; and terminating Plaintiff's employment.

61.     Defendant subjected Plaintiff to a racially hostile work environment through the cumulative effect of the foregoing race-based harassment and discrimination.

62.     Defendant retaliated against Plaintiff for complaining about race discrimination to Defendant's Office of Human Resources in or around December 2023 by subjecting her to a pretextual investigation and terminating her employment.

63.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages, lost benefits, emotional distress, and humiliation.

64.     Defendant's conduct was willful, wanton, malicious, and/or conducted with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

**COUNT II**
**Sex Discrimination, Sexual Harassment, Race Discrimination, Religious Discrimination, and Retaliation (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)**
**Plaintiff v. Defendant**

65.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

66.     Plaintiff is a member of protected classes by virtue of her sex (female), race (Black), and religion (Christian).

67.     Defendant discriminated against Plaintiff on the basis of her race by implementing and enforcing racially discriminatory grooming standards; subjecting Plaintiff to discipline based on her natural Black hair texture; removing Plaintiff from the GG Club; subjecting Plaintiff to disparate treatment in the investigation concerning special orders; subjecting Plaintiff to a racially hostile work environment; and terminating Plaintiff's employment.

9

68.     Defendant discriminated against Plaintiff on the basis of her sex by subjecting her to severe and pervasive sexual harassment by client Brian; failing to take prompt and appropriate remedial action despite Plaintiff's repeated complaints; requiring Plaintiff to continue working with Brian; permitting Doungchampa to target Plaintiff and other female employees based on their attire while not subjecting male employees to similar treatment; and terminating Plaintiff's employment.

69.     Defendant discriminated against Plaintiff on the basis of her religion (Christian) by permitting Doungchampa to target and harass Plaintiff because Plaintiff's attire failed to comport with Doungchampa's religious beliefs and by terminating Plaintiff's employment.

70.     Defendant retaliated against Plaintiff for repeatedly complaining about sexual harassment and for complaining about race discrimination to Defendant's Office of Human Resources by subjecting her to a pretextual investigation and terminating her employment.

71.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages, lost benefits, emotional distress, and humiliation.

72.     Defendant's conduct was willful, wanton, malicious, and/or conducted with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

### COUNT III
**Sex Discrimination, Sexual Harassment, Race Discrimination, Religious Discrimination, and Retaliation (Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*)**
**Plaintiff v. Defendant**

73.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74.     Plaintiff is a member of protected classes by virtue of her sex (female), race (Black), and religion (Christian).

75.     Defendant discriminated against Plaintiff on the basis of her race by implementing and enforcing racially discriminatory grooming standards; subjecting Plaintiff to discipline based on her natural Black hair texture; removing Plaintiff from the GG Club; subjecting Plaintiff to disparate treatment in the investigation concerning special orders; subjecting Plaintiff to a racially hostile work environment; and terminating Plaintiff's employment.

76.     Defendant discriminated against Plaintiff on the basis of her sex by subjecting her to severe and pervasive sexual harassment by client Brian; failing to take prompt and appropriate remedial action despite Plaintiff's repeated complaints; requiring Plaintiff to continue working with Brian; permitting Doungchampa to target Plaintiff and other female employees based on their attire while not subjecting male employees to similar treatment; and terminating Plaintiff's employment.

77.     Defendant discriminated against Plaintiff on the basis of her religion (Christian) by permitting Doungchampa to target and harass Plaintiff because Plaintiff's attire failed to comport with Doungchampa's religious beliefs and by terminating Plaintiff's employment.

78.     Defendant retaliated against Plaintiff for repeatedly complaining about sexual harassment and for complaining about race discrimination to Defendant's Office of Human Resources by subjecting her to a pretextual investigation and terminating her employment.

79.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages, lost benefits, emotional distress, and humiliation.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Leia Delgado respectfully requests that this Court enter judgment in her favor and against Defendant Gucci America, Inc. and award the following relief:

a.      A declaratory judgment that Defendant's actions violated Title VII, 42 U.S.C. § 1981, and the PHRA;

b.      Back pay, front pay, and all other compensation lost as a result of Defendant's unlawful conduct;

c.      Compensatory damages for emotional distress, humiliation, embarrassment, and other non-economic harm;

d.      Punitive damages in an amount sufficient to punish Defendant for its willful and malicious conduct and to deter similar conduct in the future;

e.      Pre-judgment and post-judgment interest as provided by law;

f.      Reasonable attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and 43 P.S. § 962(c.1);

g.      Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury.

THE GOLD LAW FIRM, P.C.

By:      /s/ Sidney L. Gold, Esquire
        SIDNEY L. GOLD, ESQUIRE
        I.D. No.:  21374
        1835 Market Street, Suite 515
        Philadelphia, PA 19103
        (215) 569-1999
        **Attorney for Plaintiff**

DATED:   December 23, 2025

## **VERIFICATION**

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE:_____ 12/16/2025

*Leia Delgado*
Leia Delgado (Dec 16, 2025 13:37:07 EST)

_____
LEIA DELGADO, PLAINTIFF